UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FILED
2017 OCT 30 PM 12:09
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | | |
|---|---|---|
| KASEY DANIELLE RAINS, | ) | |
| *Plaintiff,* | ) ) ) | |
| vs. | ) ) | No. _____ |
| CHARLES SCOTT CRAVENS, *in his individual and official capacity as Sheriff of Fentress County Tennessee,* | ) ) ) ) ) | CAUSES OF ACTION: Civil Rights Violations *JURY TRIAL DEMANDED* |
| and | ) ) | |
| FENTRESS COUNTY, TENNESSEE | ) ) | |
| *Defendants.* | ) | |

## COMPLAINT

1. Plaintiff, Kasey Danielle Rains (hereinafter, on occasion "Plaintiff"), by and through counsel, brings this action for damages and declaratory relief pursuant to 42 U.S.C. § 1983 and Tenn. Code Ann. 8-8-302 against Defendant Charles Scott Cravens (hereinafter, on occasion, "Defendant Cravens" or "Cravens" or "Sheriff Cravens"), former Sheriff of Fentress County, and Defendant Fentress County, Tennessee.

### PARTIES

2. Plaintiff is a citizen and resident of Campbell County, Tennessee. At all times pertinent hereto, Plaintiff was an inmate at the Fentress County Jail under the care, custody, and control of Defendant Cravens. Plaintiff is no longer incarcerated.

3. Defendant Fentress County is a political subdivision of the State of Tennessee.

## JURISDICTION AND VENUE

4. This action arises out of the mistreatment suffered by the Plaintiff at the hands of the Defendants in Fentress County, Tennessee.

5. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Eighth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 *et seq.*, as well as Tenn. Code Ann. 8-8-302.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the events related to this case occurred in this District.

## FACTUAL BACKGROUND

8. Defendant Cravens was the elected Sheriff of Fentress County, Tennessee. Cravens was elected Sheriff in or about August 2014, having been previously elected to serve as Sheriff from in or about September 2006 through in or about August 2010. On or about April 14, 2017, Cravens resigned, effective April 28, 2017.

9. As Sheriff of Fentress County, Cravens was the chief law enforcement officer in charge of the Fentress County Sheriff's Department ("FCSD"), which employs deputies, correctional officers, and support staff. The FCSD is located in Jamestown, Tennessee, the county seat of Fentress County, in the Middle District of Tennessee. Among other things, the FCSD maintains the operations of the Fentress County Jail, a correctional facility housing approximately 147 male and female inmates.

10. Plaintiff is a female person who was incarcerated in the Fentress County Jail beginning in or about June 2016 and ending November 2016.

11. While Plaintiff was incarcerated at the Fentress County Jail, the Sheriff authorized and oversaw the maintenance of a vegetable garden on the premises of the jail that was maintained by a group of female inmates referred to as the "Garden Girls."

12. The "Garden Girls" were organized into smaller groups responsible for particular garden-related tasks on set dates and times.

13. Sheriff Cravens ran the Fentress County Jail as a personal fiefdom, only complying with local, state, and federal law insofar as it was convenient for him.

14. He maintained a reputation for bestowing gratuity upon female inmates that were flirtatious with him. However, he also maintained a reputation for violence and capriciousness against inmates who opposed him.[1] Plaintiff was aware of Sheriff Cravens' reputation from the respective beginning of her incarceration at the Fentress County Jail.

15. Many of the Garden Girls flirted with Sheriff Cravens in hopes that he would confer favors, including but not limited to money on the jail commissary, cigarettes, and other benefits, upon them.

16. Plaintiff and another Garden Girl (referred to hereinafter as "Unnamed Garden Girl") were in the same Garden Girl sub-group and, like the other Garden Girls, flirted with Sheriff Cravens.

17. These flirtations included the statement that Plaintiff and Unnamed Garden Girl should engage in group sex when they are released.

---

[1] An example of this violence includes Cravens' bashing the head of a handcuffed inmate in November 2016, which led to one of Craven's criminal convictions.

18. On or about August 15, 2016, Sheriff Cravens explained to Plaintiff and Unnamed Garden Girl that he had had a location in mind – a trailer on his private property in unincorporated Grimsley, Tennessee – at which the three could engage in group sex.

19. Plaintiff was surprised at the dramatic escalation from flirtation to request for sex.

20. Life in the Fentress County Jail is tedious and difficult. The banality and paucity of this existence amplifies the significance of small favors like cigarettes, warm clothes, family visits, and phone calls. It was precisely these enticements Sheriff Cravens used to coerce the Plaintiff.

21. Due to these temptations and out of fear for what may happen should she refuse the most powerful law enforcement official in Fentress County, Plaintiff acquiesced.

22. The three agreed that they would not tell anyone who asked that they needed to haul cornstalks away from the jail, which required them leaving the jail grounds together.

23. The three actually did leave the jail and dispose of cornstalks, but they also stopped at Sheriff Cravens' trailer where he directed the women to engage in group sexual activity that included oral and vaginal sex between Sheriff Cravens and Plaintiff.

24. On or about August 14, 2016, Sheriff Cravens gave his personal cell phone number for use of Plaintiff and Unnamed Garden Girl by which inmates with whom he was having sex could call in requests for favors. Plaintiff took advantage of these favors.

25. Approximately one week later, on or about August 22, 2016, Plaintiff and Unnamed Garden Girl left the jail under the premise of disposing of cornstalks from the jail. Sheriff Cravens allowed Unnamed Garden Girl to use his cell phone while he vaginally penetrated Plaintiff in front of Unnamed Garden Girl. Plaintiff did not want to engage in this or

any other sexual relations with the Sheriff but submitted herself to him because she knew the Sheriff expected sex with at least one of the girls.

25. On or about August 29, 2016, Sheriff Cravens demanded that Plaintiff and Unnamed Garden Girl make another sex trip away from the jail in a County pickup truck.

26. On this trip, Plaintiff and Unnamed Garden Girl requested the Sheriff take them to Dairy Queen to get ice cream, and he obliged. He then took them down a dirt road on the outskirts of Jamestown. Unnamed Garden Girl submitted herself to Sheriff Cravens on the tailgate of the County vehicle. Plaintiff did not participate on this occasion.

27. Because she had already accepted favors offered by Sheriff Cravens and feared the consequences of rebuking him, Plaintiff continued to acquiesce to the Sheriff's sexual demands and she continued to use his cell phone to call in favors.

28. Sometime after having sex with Sheriff Cravens for the second time, Sheriff Cravens interrogated Plaintiff about maintaining the secrecy of their sexual activities and told her that if anyone asked to say that there was another officer with them when they left the jail.

29. During the month of September 2016, Sheriff Cravens took Plaintiff to see her daughter. Cravens told Plaintiff's Correctional Officer that Plaintiff's daughter was sick. On the way back, Sheriff Cravens stopped in the corn field to have sex with Plaintiff in the County pickup truck. Due to Plaintiff's fear of Cravens himself, as well as the fear that she would be in trouble if anyone found out about the arrangement, she did not resist the Sheriff Cravens' advances and requests for sex.

30. On or about November 8, 2016, Plaintiff told Sheriff Cravens that she would soon be released from custody of the Fentress County Jail. Sheriff Cravens took Plaintiff to see her

family. On the way back, Sheriff Cravens stopped at Pickett State Park and had sex with Plaintiff for the last time by the restroom facilities.

31. Plaintiff never again engaged in sexual activity with Sheriff Cravens following her release from the Fentress County Jail.

32. Following Plaintiff's first sexual act with Sheriff Cravens, she felt as that she could not refuse Sheriff Cravens and that she must continue because Sheriff Cravens had complete control over her live in the Fentress County Jail.

33. Plaintiff accepted the favors offered by Sheriff Cravens, however, her participation in each and every one of the sexual encounters was coerced by the power, prestige, and authority of the office of the Sheriff of Fentress County, along with Sheriff Craven's reputation for violence and capriciousness against those who opposed him.

34. While at the inception of the sexual arrangement, steps were taken to conceal the activity between Plaintiff and Sheriff Cravens, upon information and belief, other officers at the Fentress County Sheriff's Department were aware that the Sheriff was having sex with female inmates.

35. Sheriff Cravens ultimately carried out his sexual abuse of Plaintiff in an open and nonchalant manner. Trips were taken to the Sheriff's trailer without any cornstalks to dispose and members of the public, including Jamestown Dairy Queen employees, saw Sheriff Cravens riding alone with Plaintiff and other female inmates.

36. Sheriff Cravens would order other employees of the Fentress County Sheriff's department to cater to Plaintiff, making Plaintiff feel further beholden to Sheriff Cravens.

37. Transforming the clandestine abuse into an "open secret" further assisted in Sheriff Cravens' coercion of Plaintiff.

38. It seemed to Plaintiff as though no one cared to stop Sheriff Cravens from sexually abusing the female inmates of the Fentress County Jail.

39. On the trips away from the jail, Plaintiff was completely under the control of Sheriff Cravens. She was effectively Sheriff Cravens' slave and he treated her as such.

40. Plaintiff believed that no one could help her and that she would be the one to get in trouble if she complained about the Sheriff.

41. Due to Plaintiff's pre-existing mental health problems, including substance abuse disorder, and her incarceration, she was of such mental and emotional frailty as to be susceptible to Sheriff Cravens' devises and Sheriff Cravens violated the position of trust and authority he held over Plaintiff, such that punitive damages are appropriate.

42. Plaintiff is in serious need of counseling and treatment as a result of the abuse inflicted by Sheriff Cravens, but due to her poverty, her ability to pursue this treatment has been limited.

## COUNT I:

## VIOLATION OF PLAINTIFF'S RIGHT TO BE FREE FROM SEXUAL ABUSE IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

## (42 U.S.C. § 1983)

### (DEFENDANT CRAVENS AND DEFENDANT FENTRESS COUNTY)

43. Plaintiff hereby incorporates all allegations above as if restated herein verbatim.

44. Sexual abuse of an inmate (already adjudicated guilty and serving a sentence) by an officer violates the prohibition against cruel and unusual punishment of Eighth Amendment of the United States Constitution.

45. Sexual abuse of an inmate (while the inmate is a pretrial detainee) by an officer violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

46. Sheriff Cravens acted under color of law in all acts described above. He was charged with the oversight of Plaintiff as an inmate of the Fentress County Jail.

47. Sheriff Cravens used a Fentress County vehicle to facilitate his sexual abuse of the Plaintiff and other inmates.

48. Sheriff Cravens used his office as both a "carrot" (by providing favors only a law enforcement official could provide to inmates) and a "stick" (by implied threats of official retribution and demonstrations of violence against other inmates) for the coercion of Plaintiff into sex.

49. Sheriff Cravens was, at all times relevant to this case, the ultimate policymaker for the Fentress County Sheriff's Department

50. Sheriff Cravens' actions may fairly be said to represent the official policy, practices, and/or customs of Fentress County. One custom was that the Sheriff is entitled to sex from female inmates.

51. Sheriff Cravens' extensive sexual abuse of Plaintiff serves no legitimate penological purpose.

52. Sheriff Craven's extensive sexual abuse of Plaintiff was the product of coercion through the power and authority of the office of Sheriff of Fentress County.

53. Upon information and belief, deputy sheriffs serving under Sheriff Cravens knew about his sex with the Plaintiff but did nothing to stop it.

54. As a result of Sheriff Cravens' unlawful conduct, Plaintiff has suffered

a. Emotional distress and anxiety, including but not limited to the constant worry and unease resulting from the public knowledge of the Plaintiff's sex with the Sheriff, along with the constant fear of reprisal that persists to the present date;

b. Shame and humiliation that the Plaintiff was sexually penetrated and abused by Sheriff Cravens, and the dread that other community members may ostracize her as a result of the Sheriff Cravens' sexual abuse;

c. Sleeplessness and depression; and

d. Loss of enjoyment of life because of the memories of the unspeakable acts the Sheriff perpetrated upon them.

## COUNT II:

### SEXUAL ASSAULT AND BATTERY

### (TENN. CODE ANN. 8-8-302)

### (DEFENDANT FENTRESS COUNTY)

55. Plaintiff hereby incorporates by reference all paragraphs above as if restated herein verbatim.

56. Defendant Fentress County is a county of the State of Tennessee with its county seat in Jamestown.

57. At all dates and times mentioned above and herein, Defendant Cravens' directed, demanded, and perpetrated the above-described sexual acts under his authority as the elected Sheriff and the ultimate policymaker for the Fentress County Sheriff's Department.

58. All above-described sexual acts between Sheriff Cravens and Plaintiff were the product of coercion and were thus nonconsensual.

59. Fentress County is liable for these actions pursuant to Tenn. Code Ann. § 8-8-302.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff requests judgment against Charles Cravens and Fentress County as follows:

60. That the Defendants answer this complaint within the time provided by law.

61. That this cause be tried by a jury.

62. That a judgment be entered for Plaintiff on each count.

63. That the Plaintiff be awarded all damages to which it may appear she is entitled to by the proof submitted in this cause, including nominal, compensatory and punitive damages.[2]

64. That the Plaintiff be awarded attorney's fees pursuant to 42 U.S.C. § 1988, plus compensation for any expert fees and other costs reasonably expended in pursuing this matter.

65. That the Plaintiff be awarded pre- and post-judgment interest.

66. That costs be taxed to the Defendants.

67. That the Plaintiff be awarded all other relief to which it may appear she is entitled, the interests of justice demanding it.

By: s/MARCOS M. GARZA
MARCOS M. GARZA (BPR #021483)
*Attorney for Plaintiff*
**GARZA LAW FIRM, PLLC**
550 W. Main Street, Suite 340
Knoxville, TN 37902
(865) 540-8300
mgarza@garzalaw.com

---

[2] Punitive damages are requested only against Charles Cravens, as such damages are not available against Fentress County.